De Saussuee, Chancellor.
The briefs of the bill and answer state the case and make part of this decree. Two questions arise in this case. The first is, whether the limitation over in the will of the late Mrs. Charlotte Cordes, mother of the complainants, is within the prescribed limits, and therefore good; or whether the limitation is too remote, and void ? The words in the will are, “ I give and bequeath to my son, Thomas Evans Codes, and to him and his heirs and assigns forever, the following negroes: — Molly, Chañe, Harriet, Maria, Solomon, Feb, Amey, Gabriel, and Juliana, together with the present and future issue of the females, and should he die without lawful issue, the said negroes shall return to my *109 other surviving children.” This whole subject is queslio veocata; many decisions have been made in the English Courts which are not at all reconcilable. In our own Courts it has been much mooted — without going through the mass of them, it may be sufficient to notice a few of them. In Guerry v. Vernon, 1 N. & M’C. 69, decided in 1818, there was a bequest by a testator of two female slaves and their increase, to his daughter, Florida Guerry, “but in case my daughter,* Florida Guerry, should die without heirs of her body, then the said negro girlsIsabel and Hannah, to return to my son Isaac Guerry, and if my son, Isaac Guerry should die without issue, then the said negroes to return to my son James Walker’s children.” The daughter Florida survived her father, married and died without leaving any issue alive at her death. That learned judge and distinguished citizen, Mr. Cheves, delivered the opinion of the whole Court, that the limitation over was too remote and void. . t
In Henry v. Felder, 2 M’C. Ch. 333, decided by the Court of Appeals in 1821, the words of the bequest were as follows, “I give and bequeath to Elizabeth Conlietle, a negro girl named Dinah, to her and the heirs of her body lawfully begotten forever, but on failure of issue, to go to the eldest child of my daughter Nancy Connor.” Chancellor Thompson held the limitation to be too remote and void, and the Court of Appeals in an elaborate argument sustained the decree. These then are cases where Court guarded against limitations of too great an extent, and declared them void.
In the case of Treville u Ellis, (unpublished manuscript case) the testator, after giving to his children different portions of property, goes on to say, “ It is my will and desire, that should any of my children die without lawful heirs of their body, that then their part or division of my estate shall be divided equally between the surviving children, share and share alike.” The Chancellor (De Sausstjee), held the limitation over too remote and void. The Court of Appeals held the limitation over to be good, and reversed the Chancellor’s decree. In Stephens v. Patterson executor of King (manuscript case), decided in 1828, the words of the will were “I give and bequeath to my daughter Mary, my negro woman named Rose, together with her increase, to her and the heirs of her body, but should she die without lawful issue, then the said negro girl Rose to go back and be equally divided among the survivors of my children aforementioned.” Chancellor De Saussure decreed that the limitation over was too remote and void. The Court of Appeals after an elaborate *argument decided that the devise over was good, and reversed the decree of the Circuit Judge. It appears to me that the two decisions, of Treville and Ellis, and particularly of Stephens and Patterson, are so entirely applicable to the one we are considering, that they must govern it. It must therefore be decided, that the limitation over is good, and that the complainants will be entitled to the slaves in question, on the death of Thos. Evans Cordes without lawful issue.
The second question in the case is, whether the complainants are entitled, under the circumstances of the case, to security for the forthcoming of the slaves in question, after the death of Thos. Evans Cordes. The circumstances are as follows. The legatee Thomas Evans Cordes, who was in possession of the slaves, being in debt, a creditor levied his execu *110 tion on two of the slaves bequeathed to him ; a sale was made under the execution of the two slaves (Maria and Solomon), and William Ardrian one of the defendants, became the purchaser; notice had been given at time of sale, by Mr. Pettigru, of the interest of the complainants, so that he purchased with a knowledge of those interests, and that he was buying a law suit. The complainants, fearful that all the slavesin the same situation may be sold and scattered over the country, or even carried out of the State, insist on having their interests secured, for the production and delivery of the slaves, on the event occurring which would entitle them to possession. It has been the constant course of the Court to require security for the production of slaves, at the termination of a life estate, or any other contingency when the rights of remainder-men spring up, whenever those rights appear to be in danger. They appear to be in danger in this case, as Mr. Thos. E. Oordes is in debt and embarrassed, and the property is not only in danger of being .sold and scattered for his debts, but it has actually occurred with respect to the two slaves now in question. The sheriff, and Mr. Ardrian the purchaser, were both apprized of the right of the complainants at the time of the sale. *Tke dissolution of the injunction makes no difference. It was properly dissolved, because not founded on a proper affidavit. But that does not alter the question of right. The defendants having notice of the right of complainants, were bound to respect it. The sale of the slaves, by the defendant Ardrain after the notice, increases the danger and the necessity.
Wilson and Whitaker, for the appellants,
on the first ground, cited Henry v. Felder, 2 M’O. Ch. 323; and on the other grounds, insisted, that Ardrian, having acquired an interest by purchase, had the right to dispose of his own property without the restraint of any law or judicial proceeding.
Pettigru and Gruger, contra,
on the first ground referred to Stevens v. Patterson (MS. ease), and argued, that the defendant, having bought with notice and sold pendente lite, is not entitled to the protection of the Court; and that it has been the constant practice of this Court to protect the rights of remainder-men or reversioners, when they are endangered.
It is therefore ordered and decreed, that the defendant William Ardrian, do give bond and security to the satisfaction of the Commissioner, in'the value of the slaves, for the production and delivery of the slaves Maria and Solomon, if alive at the death of Thomas Evan Cordes without lawful issue, on which event the complainants will be entitled to the said slaves.
The defendant, Ardrian, appealed from this decree, because :
1. Thomas Evans Cordes took an absolute estate under the will.
2. The defendant had an unquestionable right to sell his interest in the negroes.
3. The defendant having sold before the hearing and decree, and this being known to the plaintiffs, he ought not now to be a party to this suit.